IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWANNA SIMMONS, | ) |
| | ) |
| Plaintiff, | )   2:04-cv-1767 |
| v. | ) |
| | ) |
| DEL MONTE FOODS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court for consideration and disposition is Defendant's MOTION FOR SUMMARY JUDGMENT *(Document No. 17)*. Plaintiff Lawanna Simmons ("Simmons") alleges discrimination based on race, sex and age and retaliation for engaging in protected activity with respect to promotion and compensation decisions made by Defendant Del Monte Foods ("Del Monte"). After a thorough review of Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment *(Document No. 18)*, Plaintiff's Brief in Opposition *(Document No. 21)*, Defendant's Reply Brief *(Document No. 24)*, the Statement of Material Undisputed Facts *(Document No. 19)*, Plaintiff's Response to Statement of Material Undisputed Facts *(Document No. 23)*, and Defendant's Reply *(Document No. 25)*, and the appendices attached thereto, the Court concludes that the motion will be GRANTED.

### BACKGROUND

Ms. Simmons was hired by H.J. Heinz Corporation ("Heinz") in May 1999. She was a probationary Staff Accountant, then a full-time Staff Accountant for Heinz. In that position, she reconciled bank accounts to a general ledger, and performed short-term debt analysis. In

December 2002, Del Monte acquired certain Heinz business units and Plaintiff became a Del Monte employee. She reported to Ken Woodard, Manager of Financial Accounting.

In 2003, Del Monte developed a new compensation structure to "harmonize" (standardize and simplify) job titles and compensation in the new organization. Prior to the harmonization, there had been 1000 unique job titles for 1800 employees. Del Monte harmonized the former Heinz employees by matching the employee's Heinz salary midpoint to the corresponding salary midpoint at Del Monte, which then dictated a particular Del Monte grade level and generic title under Del Monte's compensation scheme. Following the harmonization, employees were informed that future job evaluations would be based on "Market Pricing," which entailed comparing job duties and job descriptions to similar jobs in the labor market and within the company.

In May 2003, Rachel Lenyk, another Staff Accountant, resigned.[1] Woodard asked Simmons if she would like to take over Lenyk's duties. Simmons agreed because it was consistent with her desire to do additional new things and to take on new projects and opportunities. Simmons understood that she would not get a change in title or pay. In August 2003, Plaintiff received a memo advising her that as part of the harmonization process her job title was being changed from "Staff Financial Analyst" to "Associate II, salary grade level 11." Until this date, Plaintiff had believed that her title was "Staff Accountant" rather than "Staff Financial Analyst." An Analyst would have a higher salary grade than an Accountant.

In October 2003, Woodard asked Simmons if she would be interested in hedge and

---

[1]Although Simmons heard from other employees in August 2003 that Lenyk had been a Staff Financial Analyst, the record demonstrates that Lenyk was a Staff Accountant.

derivative accounting. That position became available when Angela Siecinski was promoted. Starting in approximately 2000, Siecinski had developed a system to ensure Heinz' compliance with a new financial accounting standard, FAS 133. By 2002, Siecinski's position at Heinz had evolved from Procurement Buyer to Manager of Derivative Financial Accounting. After the acquisition, Siecinski adapted her derivative accounting system to Del Monte, which did not have such a program. In response to Woodard's request, Simmons asked whether the position would be a promotion and discussed the job duties with Siecinski. Siecinski told her that she would be taking on everything that Siecinski had done. Siecinski and Simmons had similar educational and work experience, with the exception of familiarity with hedge and derivative accounting. Woodard informed Simmons that there was a six-month learning curve because it was such a high profile position and allegedly promised that she would be promoted after those six months.

From October 2003 until January 2004, Simmons continued to perform her prior job duties while also learning some of Siecinski's tasks. In January 2004, Del Monte hired Dawn Miller to fill Simmons' prior job and Simmons began training Miller while continuing to learn the derivative accounting role. Miller was paid substantially less than Simmons and had a lower job title (Associate I).

In March 2004, Siecinski submitted a notice of resignation. Simmons acknowledged that she didn't know anything about hedge accounting and had to learn the job in the two weeks before Siecinski left. Thereafter, Simmons used the derivative system that had been created by Siecinski to perform the day-to-day processes required for derivative accounting, in addition to working on fixed assets and implementing a software package called Reval. Some of Siecinski's managerial duties were assumed by Tony Dodds (Manager, Corporate Accounting). Simmons

then reported to Dodds.

Dodds prepared a job description for Simmons' new duties, which he reviewed with Simmons. He used a "Financial Analyst - Derivative Accounting" template rather than one for a "Manager - Derivative Accounting," and recommended to Human Resources that the position be salary grade level 11. Woodard had told Dodds that he hoped the position would be salary grade level 11. Simmons confirmed that the job description accurately summarized her duties. James Kennedy and Paul Schwarzmiller then performed a job evaluation and concluded that the functional title for Simmons' job was Derivative Accountant, with salary grade level 11.[2] After learning of this result, Simmons met with Kennedy and Lisa Sennett to inform them that Woodard and Steve Reyburn, Vice President of Finance, had promised her a promotion and that she did not agree with not being promoted. Kennedy and Sennett agreed to look into the matter and held a conference call with managers in the finance department regarding the scope of responsibilities of various staff accounting positions. Del Monte adhered to its original result.

Sennett told Simmons that she would hate to see Simmons leave the company and volunteered to help revise Simmons' resume for future job applications. Sennett then arranged an interview with Greg Findley, although Findley showed very little interest. Other employees in Human Resources also met with Simmons to see what other positions she might be interested in at Del Monte.

After Siecinski resigned, Woodard and Dodds decided not to fill Siecinski's position as

---

[2] In an email dated April 15, 2004, Reyburn noted that Simmons was performing all the functional aspects of the job, but received oversight from Dodds that Siecinski did not have. The email further noted Siecinski's "strong background in the underlying theory beyond the mechanics of doing the job."

Manager of General Accounting, but instead created a new grade level 12 position for Senior Financial Analyst (Associate III). Simmons did not apply for this position or express interest in it, even though Dodds was the hiring manager.

On June 25, 2004, Simmons applied for an open position, Senior Business Analyst, Manager I (salary grade level 21), which had been posted on May 19, 2004. Plaintiff was not interviewed for this position. Two acceptable candidates had already been interviewed and selected, although the job was not yet filled. Sennett informed Simmons at the time she applied that the candidate had already been selected. The first choice declined the position and the second choice, Robert Amoroso, was hired on July 6, 2004.[3] The successful candidate needed to demonstrate proficiency in statistics and forecasting and have experience in supply chain and consumer goods forecasting. Amoroso had ten years of relevant experience at Kraft Foods, which was much larger than Del Monte. Amoroso did not have an MBA or an APICS certification, both of which were preferred, but not required. Simmons did not have any expertise in forecasting or supply chain management.

On July 9, 2004, Simmons filed a charge of discrimination with the EEOC. The charge alleged race, sex and age discrimination, retaliation and violations of the Equal Pay Act.

In November 2004, Simmons interviewed with John Balbach for a Senior Cost Analyst position (salary grade level 13). Balbach then approached Simmons in January 2005 about taking a position as Senior Fixed Asset Accountant (salary grade level 13). Simmons accepted this position and she received a salary increase. Simmons' position as Derivative Accountant

---

[3] Plaintiff contends that Amoroso did not even apply for the position. Amoroso did not apply on-line because he was referred by another employee.

5

was filled by Keith Kappel, a younger white male. The job remained salary grade level 11 and Kappel's salary was lower than Simmons had been paid in that position. Indeed, Simmons' salary was higher than that of all the other salary grade level 11 employees in her department. On June 23, 2005, Simmons resigned from Del Monte.

In summary, during the two years at issue in this case, Simmons received two lateral positions and then a two-level promotion. Simmons was not selected for another, higher-level position, nor was she given the promotion she had allegedly been promised six months after taking the derivative accounting job. The persons hired to fill the positions Simmons vacated received the same, or lower, salary grade and less money than Simmons had received.

There is no direct evidence of any racist, sexist or ageist remarks by the managers involved in the decisions or incidents Simmons has alleged in the Complaint. However, Simmons testified to her belief that people, including Reyburn, continued to ignore her presence. Simmons states that Woodard would interact with white co-workers but not with her. She further testified that her last manager at Del Monte, Tim Holt, told her that she had a "clean slate," which caused Simmons to believe that her reputation was ruined and that people talked about her.[4]

### STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[4] Plaintiff does not assert a "hostile work environment" claim, nor does the record disclose the type of severe and pervasive conduct necessary to support such a cause of action.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

### DISCUSSION

Plaintiff asserts causes of action under Title VII, the Age Discrimination in Employment Act (ADEA) and the Pennsylvania Human Relations Act (PHRA), based on the promotional and compensation decisions described above. The same legal standards govern the federal and state claims. *Stultz v. Reese Brothers, Inc.*, 835 A.2d 754, 759 (Pa.Super. 2003). The familiar McDonnell-Douglas burden-shifting approach applies. Under the *McDonnell Douglas* burden-shifting framework, plaintiff must first make out a *prima facie* case of discrimination, by establishing that: (1) she was a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of her protected class were treated more favorably. *Sarullo v. United States Postal Service*, 352 F.3d

789, 797 (3d Cir. 2003).[5] If accomplished, the burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. If the employer proffers a legitimate reason for its action, the plaintiff must then show that the proffered legitimate reason(s) are merely a pretext for discrimination. *Simpson v. Kay Jewelers Div. of Sterling, Inc.,* 142 F.3d 636, 644 n.5 (3d Cir. 1998). To show pretext, plaintiff must point to some evidence from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the discharge. *Id.* at 644; *see also Fuentes v. Perski*e, 32 F.3d 759, 764 (3d Cir. 1994). The Court will address each challenged decision in turn.

  1.  <u>Staff Financial Analyst Position</u>

  Simmons contends that she was unfairly compensated as a Staff Accountant for the period from May 2003 through August 2003. Simmons reasons that she had assumed the duties of Rachel Lenyk, who had been a Financial Analyst. Simmons further points to documents she received as part of the harmonization process identifying her former job as that of Financial Analyst. A reasonable factfinder could not conclude that Defendant's conduct was discriminatory. The record establishes that Lenyk was a Staff Accountant (like Simmons) rather than a Financial Analyst. Moreover, Simmons testified that she knew that her assumption of Lenyk's duties was a lateral move. Although Simmons received documents listing her as a

---

  [5]In *Jones v. School District of Philadelphia*, 198 F.3d 403 (3d Cir. 1999), the U.S. Court of Appeals for the Third Circuit explained that "the elements of a *prima facie* case depend on the facts of the particular case[,]" and that "a *prima facie* case cannot be established on a one-size-fits-all basis." *Jones*, 198 F.3d at 411.

Financial Analyst, and the website listed her as a manager, Simmons testified that no manager ever informed her that she had received such promotions. During this entire time, Simmons continued to perform the job functions of Staff Accountant.[6] After Simmons took the hedge and derivative analyst position, Del Monte hired Dawn Miller as a Staff Accountant at a lower salary to replace her. There is simply no evidence of disparate treatment regarding Simmons' pay as a Staff Accountant.[7]

      2.      <u>Hedge and Derivative Manager Position</u>

Simmons contends that she should have been promoted to the position of Manager I, Hedge and Derivative Accounting, and/or that the position of Staff Financial Analyst - Derivative Accounting should have been harmonized to a salary grade level above 11 and/or that she should not have had to undergo a six-month learning curve before being promoted. Simmons also alleges that Del Monte reneged on a promise to promote her.[8]

The Court concludes that Del Monte is entitled to summary judgment on this aspect of the case. No reasonable fact-finder could conclude on this record that Del Monte discriminated against Simmons due to race, sex or age. Siecinski is not a valid comparator. Unlike Simmons, Siecinski developed a brand new system for hedge and derivative accounting in response to a

---

[6]The Court notes that Del Monte's harmonization process was based on salary midpoints rather than job titles. Simmons' pay did not change during this time period. Simmons contends that if she had been promoted to Financial Analyst, she should have been paid more.

[7]Del Monte contends that this incident is time-barred because it did not occur within 300 days of Simmons' filing of a charge with the EEOC. In light of the Court's resolution of this issue on the merits, the Court need not address the issue of timeliness.

[8]Simmons has not asserted a claim for breach of contract and the Court makes no findings in this regard.

new financial standard.  Based on Siecinski's performance, her job expanded and she was promoted to manager while at Heinz.  When Simmons assumed the day to day duties of the derivative accounting function, she had the benefit of Siecinski's prior creation of a workable system and of Siecinski's managerial training and oversight.  After Siecinski resigned, Simmons received managerial oversight from Dodds.  Simmons was still trying to learn the job.  There is no evidence in the record that Simmons was acting as a manager rather than as an analyst or that Simmons deserved compensation equivalent to Siecinski.

There is also no evidence from which a reasonable fact-finder could infer that the job classification as salary grade 11 was discriminatory.  To the contrary, Simmons admitted that the job description created by Dodds accurately reflected her duties, as she understood them.  As Defendant points out, Simmons essentially challenges Del Monte's business judgment as to how complex the job duties should be.  The only relevant comparator was a younger white male named Keith Kappel, who filled the derivative accounting position after Simmons was promoted.  The job remained at salary grade 11 and Kappel was paid less than Simmons.[9]

Finally, there is no valid comparator regarding the six-month learning curve.  The record reflects that the derivative accounting position was complex and high profile.  Simmons testified that even after training under Siecinski from October through March, she still had to undertake intensive training after Siecinski announced her resignation.  Simmons points only to Dawn Miller, but the duties of Simmons' old position were not comparable to the derivative accounting function.  Simmons did not have a six-month learning curve when she took over for Lenyk.

---

[9]The record does not reflect whether or not Kappel was promised a promotion after a six-month learning curve period.

3.  Senior Business Analyst Position

Simmons complained to Del Monte's management after they failed to promote her in the derivative accounting role. Simmons contends that due to discrimination and/or in retaliation for her complaints, Del Monte denied her a position as a Senior Business Analyst. The Court concludes that no reasonable fact-finder could conclude that Del Monte's failure to promote Simmons to this position was discriminatory or retaliatory.

Although Simmons had the educational background for the Senior Business Analyst position, she did not have the necessary work experience in consumer goods forecasting or supply chain management. Robert Amoroso, the person hired, had ten years of supply chain and forecasting experience at Kraft Foods. Del Monte's decision-makers consistently testified that this forecasting experience was the most important qualification, rather than the education and familiarity with Del Monte that Simmons believes made her the best candidate. The Court of Appeals has made clear that disagreements regarding an employer's business judgment cannot suffice to establish a claim for discrimination. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 468 (3d Cir. 2005); *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). Moreover, two candidates possessing the necessary qualifications had already been interviewed and selected prior to the time that Simmons applied for the position, even though the final offer had not been made. Simmons was notified the same day she sent her application that the job was no longer available. Six months thereafter, Simmons received a two-level promotion. Even if Simmons could make out a prima facie case, there is no evidence from which a reasonable factfinder could conclude that Del Monte's reasons for not selecting Simmons as a Senior Business Analyst were

pretextual or retaliatory.[10]

Conclusion

Simmons clearly believed that she was entitled to more responsible and higher-paying positions within Del Monte. Simmons' desire for advancement is commendable. Unfortunately, her employer disagreed. The anti-discrimination laws do not transform this Court into a super-personnel department vested with the authority to second-guess the wisdom of business decisions. *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995). The evidence of record does not provide any reasonable basis to conclude that Del Monte's business decisions were due to race, sex or age discrimination or were in retaliation for Simmons' protected activities in complaining about her job status. Accordingly, summary judgment must be granted on these claims.

An appropriate order follows.

McVerry, J.

---

[10]Simmons does not oppose Del Monte's motion for summary judgment as to a Senior Financial Analyst position. The record demonstrates that Simmons cannot make out a prima facie case because she failed to apply for that position.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWANNA SIMMONS, | ) |
| | ) |
| Plaintiff, | )   2:04-cv-1767 |
| v. | ) |
| | ) |
| DEL MONTE FOODS, | ) |
| | ) |
| Defendant. | ) |

## ORDER OF COURT

AND NOW, this 11th day of September, 2006, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the Defendant's MOTION FOR SUMMARY JUDGMENT *(Document No. 17)* is **GRANTED**. The clerk is ordered to docket this case closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Homer L. Walton, Esquire
Email: hwalton@tuckerlaw.com
Leta V. Pittman, Esquire
Email: lpittman@tuckerlaw.com

Beth M. Henke, Esquire
Email: bhenke@morganlewis.com
Christopher K. Ramsey, Esquire
Email: cramsey@morganlewis.com
S. Beth Gollmar, Esquire
Email: sgollmar@morganlewis.com